**STATE**

v.

Richard CONCANNON.

No. 81–255–C.A.

Supreme Court of Rhode Island.

March 24, 1983.

William F. Reilly, Public Defender, Barbara Hurst, Paula Rosin, Asst. Public Defenders, for defendant.

## OPINION

SHEA, Justice.

In an indictment filed on May 6, 1980, a Kent County Grand Jury charged the defendant, Richard Concannon, with five counts of first- and second-degree sexual assault in violation of G.L.1956 (1969 Reenactment) §§ 11–37–2 and –4, as enacted by P.L.1979, ch. 302, § 2. The grand jury also charged defendant with one count of committing an abominable and detestable crime against nature in violation of G.L.1956 (1969 Reenactment) § 11–10–1. The defendant, however, was tried only on two counts of first-degree sexual assault.[1] A Superior Court jury found him guilty on both counts of the lesser included offense of second-degree sexual assault.

The defendant now appeals from the judgment of conviction, raising several issues. One issue concerns the introduction of testimony relating to an act of fellatio. The defendant also contends that the trial justice erred when instructing the jury on the definition of reasonable doubt. Because we conclude that defendant has failed to show that prejudicial error occurred at his trial, we affirm the judgment of conviction.

The facts are not complicated. The complaining witness, who we will refer to as Marie,[2] was nine years old at the time of the assault. She lived with her mother, her mother's boyfriend (defendant), and her younger brother.

Marie's testimony detailed two specific instances of sexual assault. She testified that defendant entered the bathroom while she was bathing and began washing her

Dennis J. Roberts II, Atty. Gen., Brian Van Couyghen, Sp. Asst. Atty. Gen., for plaintiff.

1. Two other counts of second-degree sexual assault allegedly committed against the complaining witness were dismissed prior to trial as was the charge of committing an abominable and detestable crime against nature with the complaining witness's brother. The remaining count of second-degree sexual assault was severed, as it involved a different child.

2. This is not her real name.

with a washcloth. He told her to stand on the side of the bathtub, which she did. He then put his penis between her legs and into her vagina. Two days later, again while Marie was bathing, defendant entered the bathroom and began touching her. When she stepped out of the bathtub and started to dry off, she said, defendant got on his knees and put his penis into her vagina, then stood up and pushed her head, forcing her to commit an act of fellatio.

At this point, defense counsel objected and moved to pass the case. He argued that the state had not complied with Rule 16 of the Superior Court Rules of Criminal Procedure because it failed to furnish any discovery material relating to the offense of fellatio.

The offense of first-degree sexual assault requires an act of penetration, whereas second-degree sexual assault merely requires sexual contact. Sexual penetration is defined in G.L.1956 (1981 Reenactment) § 11–37–1 as

"sexual intercourse, cunnilingus, fellatio, and anal intercourse, or any other intrusion, however slight, by any part of a person's body or by any object into the genital or anal openings of another person's body, but emission of semen is not required."

Sexual contact on the other hand merely requires "the intentional touching of the victim's or accused's intimate parts, clothed or unclothed, if that intentional touching can be reasonably construed as intended by the accused to be for the purpose of sexual arousal, gratification or assault." General Laws 1956 (1981 Reenactment) § 11–37–1.

Concannon's pretrial discovery motion, filed under Rule 16 requested in part:
"As to those persons whom the State expects to call as witnesses at the trial, all relevant recorded testimony before a grand jury of such persons and all written or recorded verbatim statements, signed or unsigned, of such persons and,

if no such testimony or statement of a witness is in the possession of the State, a *summary of the testimony* such person is expected to give at the trial." (Emphasis added.)

The state failed to provide a summary of the testimony it expected Marie to give at trial. In response to defendant's discovery request, the state did furnish a copy of a statement made by Marie indicating that the acts of penetration had consisted of vaginal intercourse and cunnilingus.[3] This statement quoted Marie as saying that Concannon, "asked me to kiss his private" but it did not mention whether or not Marie had actually done so. A copy of a police report provided with the discovery material and the grand jury testimony of a detective indicated that Marie stated she had refused to comply with defendant's request that she kiss his penis. Neither the prosecution nor the defense made any reference to this later statement at trial. In addition, Marie's grand jury testimony did not include a fellatio allegation.

The trial justice denied defendant's motion to pass the case. He held "that the report or statement of [Marie] which was supplied—to the [d]efendant, although it does not specifically state that he, in fact, placed his penis in her mouth, that he did ask her to kiss his private, should have alerted the [d]efendant to at least that particular allegation."

The defendant argues that the trial justice erred when he refused to pass the case. Specifically, defendant contends that the state violated the discovery provisions of Rule 16 since it did not provide the defense with any indication that Marie would testify to an act of fellatio.

In our adversary system, based as it is upon a single trial held on a single occasion, it is imperative that the defense come to trial as well equipped as possible to raise reasonable doubt in the minds of one or

---

**3.** Although Marie did refer to an act of cunnilingus in her statement to the police, she did not make that allegation in her trial testimony.

more of the jurors. Rule 16, Rhode Island's criminal discovery mechanism, attempts to ensure that both parties receive the fullest possible presentation of the facts prior to trial. *See State v. Coelho,* R.I., 454 A.2d 241 (1982). The primary purpose of discovery is to eliminate surprise at trial. A prosecutor or a defendant who does not comply with the rules of discovery undermines the judicial process. Both *State v. Coelho, supra,* and *State v. Darcy,* R.I., 442 A.2d 900 (1982) stand for the proposition that a prosecutor's failure to comply with discovery may infringe upon a defendant's due process rights to establish the best available defense.

In the case at bar, defendant was charged with first-degree sexual assault, a generic offense. He could only determine the specific allegations by filing a bill of particulars pursuant to Rule 7(f) of the Superior Court Rules of Criminal Procedure, or by relying on discovery. The defendant chose not to file a bill of particulars but chose instead to rely entirely upon discovery. In *State v. McParlin,* R.I., 422 A.2d 742, 745 (1980), this court took particular note of the importance of discovery procedures to a defendant facing a generic charge:

> "This discovery rule, in addition to Rule 7(f), which authorizes a bill of particulars, will effectively permit a person accused of an offense in general terms to obtain detailed information in respect to the underlying circumstances to be presented in support of the accusation."

In order to comply fully with defendant's discovery request, the state should have provided defense counsel with a summary of the testimony concerning fellatio. None of the statements provided by the state alerted defense counsel to that allegation. Marie's statement that Concannon had asked her to "kiss his private" did not indicate whether she actually complied. In fact, the police report recites that Marie had refused to comply. Even a statement indicating that Marie did comply with the request would not have alerted defense counsel to all of the requisite elements required for first-degree sexual assault, particularly penetration.

Rule 16(i) provides sanctions for the failure of either party to comply with that rule. The declaration of a mistrial is an appropriate sanction under the rule. *State v. Darcy,* R.I., 442 A.2d 900, 902 (1982). However, the imposition of any Rule 16 sanction is a matter within the sound discretion of the trial justice. *State v. Coelho,* R.I., 454 A.2d at 245; *State v. Darcy,* R.I., 442 A.2d at 902. This case presents a situation where the trial justice incorrectly concluded that the state had complied with the rule. We must therefore try to determine whether a mistrial would have been an appropriate sanction.

We said in *State v. Coelho,* R.I., 454 A.2d at 245, that in fashioning a remedy, a trial justice and this court, on appeal, should consider: "(1) the reason for nondisclosure, (2) the extent of prejudice to the opposing party, (3) the feasibility of rectifying that prejudice by a continuance, and (4) any other relevant factors." A careful examination of the record yields very little evidence that we can evaluate under the four-part test. The record does not indicate the reason for nondisclosure. Without evidence to the contrary, we can only assume that the nondisclosure was inadvertent rather than deliberate and that the prosecution became aware of the discrepancy only as the witness's testimony was being prepared and not days or weeks earlier.

The easier cases to resolve arise when the prosecutor appears deliberately to have failed to provide discovery material. When the defense is misled into proceeding to trial unprepared, the basic precepts of due process are violated. "The courts cannot allow the integrity of the criminal system to be undermined by the over-zealous prosecutor." *In re Ouimette,* 115 R.I. 169, 175, 342 A.2d 250, 253 (1975). In the case of deliberate nondisclosure, we will grant a new trial without inquiry into the degree of harm caused by the misconduct.

The more difficult cases to resolve are those cases, such as this, in which there apparently has been inadvertent nondisclosure. In these situations, we must move to the second element of the test, which is prejudice to the opposing party. Although the result in *State v. Coelho, supra,* was produced by the combination of several circumstances discussed in that opinion, Rule 16, as we said, is designed to prevent "procedural" rather than "substantive" prejudice. Procedural prejudice occurs when defense counsel must proceed to trial unprepared. To demonstrate procedural prejudice on appeal, defendant must show that had the information been disclosed, there is a likelihood that trial counsel using the undisclosed information could have created a reasonable doubt in the minds of one or more jurors to avoid a conviction. *See In re Ouimette,* 115 R.I. at 179, 342 A.2d at 254–55. Such a determination is not always easy to make because an after-the-fact determination of the probable impact of a discovery violation can be measured only by the effect that the nondisclosure had on defense preparation.

In this case we would be justified in concluding that a guilty verdict of first-degree sexual assault would be persuasive of substantial prejudice to defendant, entitling him to a new trial. However, the jury acquitted defendant of the first-degree sexual-assault charge. Therefore, it seems certain that the evidence that was not disclosed in discovery did not contribute to the conviction since the jury obviously did not believe it.[4] We cannot say then that the failure to provide discovery relating solely to fellatio hampered defense counsel's ability to present an adequate defense. The defendant's appeal on this issue must fail.

Our holding today in no way sanctions the state's late discovery of, or failure to discover, such critical evidence. Nevertheless the aim of Rule 16 is to alleviate proce-

dural prejudice. When procedural prejudice does not result in a guilty verdict, we will not order a new trial.

Concannon also claims that his right to be prosecuted by indictment was violated. Both the fortieth amendment to the Rhode Island Constitution and G.L.1956 (1981 Reenactment) § 12–12–1.1 provide that an offense punishable by life imprisonment (as first-degree sexual assault is) can only be prosecuted by indictment.

Concannon asserts that since Marie's testimony before the grand jury did not include a fellatio allegation, the grand jury did not contemplate an act of fellatio when it indicted him for first-degree sexual assault. Therefore, he argues, the trial justice erred by admitting the fellatio testimony and by instructing the jury on fellatio as a first-degree sexual assault.

Although defense counsel presents this issue in terms of error occurring at trial, he is really challenging the sufficiency of the indictment. An indictment is sufficient if it (1) contains the elements of the offense charged, (2) sufficiently informs the accused of the charge that he must defend, and (3) enables the accused to plead a judgment under the indictment as a bar to any future prosecution for the same offense. *United States v. Bailey,* 444 U.S. 394, 414, 100 S.Ct. 624, 636, 62 L.Ed.2d 575, 593 (1980); *Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240, 250–51 (1962). A sufficient indictment ensures that a defendant is prosecuted on the basis of facts presented to the grand jury.

The record discloses that defendant failed to challenge the sufficiency of the indictment either prior to trial as required by Rule 12(b)(2) of the Superior Court Rules of Criminal Procedure, or during trial. He merely moved for a mistrial on the basis of

---

4. It appears that the jury did not convict defendant of first-degree sexual assault because it found that Marie's testimony concerning vaginal intercourse and fellatio was not credible. The defendant presented evidence which rebut-

ted the allegation of vaginal penetration. At trial, Dr. Evrard testified that there was a high degree of probability that a male penis had not penetrated Marie.

a discovery violation. Concannon also failed to request a bill of particulars pursuant to Rule 7(f), which would have required the state to specify the particulars of the criminal offense with which he was charged.

 A defendant waives his right to challenge an indictment unless he makes a timely motion under Rule 12(b)(2), (3). *See State v. Roberts,* R.I., 420 A.2d 837, 840 (1980); *State v. LaPlante,* R.I., 409 A.2d 130, 132 (1979). We will nevertheless grant relief from the harsh effects of waiver if a defendant can demonstrate why relief should be granted, notwithstanding the untimely assertion of the challenge. However, we will not grant relief unless the indictment is so obviously defective as not to charge the offense alleged by any reasonable construction. *See United States v. Wabaunsee,* 528 F.2d 1, 2 (7th Cir.1975); *United States v. Vanderberg,* 358 F.2d 6, 10 (7th Cir.1966).

 In the case at bar, we find no reason to quash the indictment. If defendant believed the indictment did not sufficiently inform him of the offense alleged, he should have moved to dismiss the indictment prior to trial. When an indictment is otherwise sufficient, a lack of evidentiary details establishing the facts of the offense does not invalidate that indictment since defendant's remedy lies in a motion for bill of particulars. Failing to file a motion for bill of particulars and neglecting to challenge the indictment either before or during trial, precludes defendant from challenging the indictment on appeal.

 Finally, the defendant argues that the trial justice erred by using the phrase "substantial doubt" when defining "reasonable doubt" to the jury in his instructions.[5] The defendant concedes, however, that our decision in *State v. Thorpe,* R.I., 429 A.2d 785, 790 n. 4 (1981), established that trial

justices "hereinafter" were not to utilize the phrase "substantial doubt" in their jury instructions. The defendant acknowledges that this court has declined to apply this ruling of *Thorpe* retroactively. *State v. Ballard,* R.I., 439 A.2d 1375, 1387 (1982). Since the trial in the present case was held in 1980, prior to the *Thorpe* decision, the defendant's position is without merit. We will not depart from our decision to apply the *Thorpe* prohibition prospectively.

For the foregoing reasons, the defendant's appeal is denied and dismissed, the judgment of conviction is affirmed, and the papers of the case are remanded to the Superior Court for further proceedings.

---

**5.** As part of his instructions, the trial justice stated: "A reasonable doubt is a doubt based on the evidence or the lack of evidence. A reasonable doubt is not a fanciful, or a possible or a speculative doubt. It must be more than that. A doubt to be reasonable must be an actual or a *substantial doubt* which remains in your minds after you have fairly, impartially and thoroughly evaluated the evidence presented to you." (Emphasis added.)