STATE

v.

Robert LAWRENCE.

No. 84–312 C.A.

Supreme Court of Rhode Island.

May 9, 1985.

Arlene Violet, Atty. Gen., Thomas Dickinson, Sp. Asst. Atty. Gen., for plaintiff.

William F. Reilly, *Public Defender*, Barbara Hurst, Asst. Public Defender, Chief-Appellate Div., Paula Rosin, for defendant.

## OPINION

MURRAY, Justice.

The defendant, Robert Lawrence, appeals from a conviction of first and second degree sexual assault in violation of G.L. 1956 (1981 Reenactment) §§ 11–37–2 and 11–37–4, as amended by P.L.1981, ch. 119, § 1. The victim of these sexual assaults is John Smith,[1] who was eight years old at the time the assaults took place and nine years old at the time of trial. John was the state's only direct witness below. He testified that he would often play in a wooded area across the street from a laundromat where his mother worked. On numerous occasions, he testified, he met the defendant in those same woods and, on the defendant's instructions, would engage in fellatio and other sexual acts with the defendant, who was then twenty-five years of age. These meetings occurred throughout the summer of 1982. On August 24, 1982, after one such encounter in the woods, the defendant and John were "horsing around" in front of the laundromat when the defendant inadvertently injured John by kicking him in the leg and causing some stitches to break open. John apparently became upset and, out of the hearing of the defendant, told his aunt what had been transpiring in the woods. The aunt informed John's mother, who called the police. The defendant was arrested shortly thereafter.

Robert Lawrence took the stand in his own defense and denied any sexual contact with John. He stated that although he knew John from having met him while he was doing laundry at the laundromat, he had never sexually assaulted him and had never encountered him in the woods. In fact, he stated, he had not been in the woods for any reason for the past ten years.

The state then made it known, first at a conference in chambers and later in court out of the presence of the jury, that it intended to call Harriet Smith,[2] John's mother, in rebuttal. Mrs. Smith would testify that not only had she seen defendant in and around the wooded area across the street from the laundromat, but that she had also observed her son and defendant leave the woods together on August 24, 1982. Defense counsel objected strenuously. Mrs. Smith had been excluded by the trial judge from testifying in the state's case in chief because the prosecution had not provided the defense with a summary of her expected testimony, as was requested pursuant to Rule 16(a)(7) Superior Court Rules of Criminal Procedure. The defense took the position that Mrs. Smith should be similarly excluded from testifying in rebuttal. Over defendant's objection, the trial judge permitted John's mother to testify in rebuttal.

The central issue presented by this appeal concerns the scope of the sanctions that must be imposed on a party for failure to comply with the discovery provisions of Rule 16. Specifically, may the state call in rebuttal a witness who has been previously

---

1. This is not his real name.

2. This is not her real name.

prohibited, because of Rule 16 violations, from testifying in the state's case-in-chief? We think that in the circumstances of this case, the trial judge did not abuse his discretion in permitting Mrs. Smith to testify in rebuttal, and thus we affirm the conviction.

 The state concedes that it failed to provide defendant with a summary of Harriet Smith's likely testimony, even though a request was made and followed by a motion to compel. It suggests, however, that the trial judge's remedy—prohibiting Mrs. Smith's testimony in the state's case in chief—was somewhat "draconian." We think the trial judge's remedy was entirely appropriate. In a number of recent cases decided by this court, it has been continually emphasized that the provisions of Rule 16 discovery are to be taken seriously, by both sides. *State v. Engram,* — R.I. —, 479 A.2d 716 (1984); *State v. Verlaque,* — R.I. —, 465 A.2d 207 (1983); *State v. Coelho,* — R.I. —, 454 A.2d 241 (1982); *State v. Darcy,* — R.I. —, 442 A.2d 900 (1982).

In *State v. Engram,* — R.I. at —, 479 A.2d at 718–19, this court summarized the options of a trial judge when confronted with the failure of a party to abide by the provisions of Rule 16:

"In order to enforce the rules of discovery, the trial justice has the power to impose sanctions for noncompliance. The sanctions may include an order requiring the discovery, granting a continuance, prohibiting the party from introducing in evidence the material that was not disclosed, or entering any appropriate order. Super.R.Crim.P. 16(i). The imposition of any of these sanctions is a matter addressed to the sound discretion of the trial justice."

 In the present case, the question of whether to permit Mrs. Smith to testify in rebuttal was likewise entrusted to the "sound discretion of the trial justice." *Id.* at —, 479 A.2d at 719. We find no abuse of that discretion on the record before us. The defendant's motion for discovery requested "[a] written list of the names and addresses of all persons whom the attorney for the state intends to call as witnesses at the trial *in support of the State's direct case*" and "a summary of the testimony such person is expected to give at trial." (Emphasis added.) The defendant did not request the names of, or a summary of the likely testimony of, witnesses the state intended to call in rebuttal. Even had such a request been made, it would likely have been an impossible one to fill. The state had no way of knowing if it would call a rebuttal witness and, if it did, what that witness would be called upon to rebut. Although Rule 16 provides for reciprocal discovery, it does not require a criminal defendant to make known whether he will testify at trial. Nor does it require the defendant to furnish a summary of his expected testimony. The state had no way of knowing that defendant would take the stand and deny ever having been in the woods with John. It certainly did not know that defendant would testify that he had not been in the woods at any time during the past ten years.

This opinion should in no way be interpreted as condoning the failure of the state to provide a summary of Harriet Smith's expected testimony. The trial justice imposed an appropriate sanction for that failure by disallowing Mrs. Smith from the state's case in chief. When defendant took the stand, however, he left open the possibility that the state would call a witness in rebuttal, and we perceive no abuse of discretion on the part of the trial justice in permitting that witness to testify.

 The defendant also argues that Mrs. Smith's testimony went beyond the scope of a proper rebuttal and thus circumvented the prohibition on her giving direct testimony. We have reviewed the transcript carefully and find some merit in this argument. Mrs. Smith not only testified that she had seen the defendant and her son in the wooded area on August 24, 1982, but also went on at some length about what happened that day among herself, the

defendant, her son and his aunt. We think the trial justice should have limited Mrs. Smith's testimony to her knowledge of the defendant's presence in the woods, the immediate subject of rebuttal. However, any error which may have occurred was harmless. The events that occurred immediately before and after the defendant's presence at the laundromat had no bearing on the question of his guilt or innocence, but merely provided some background details. The real damage to the defendant came from Mrs. Smith's testimony that she had seen him in the woods on several occasions during the summer of 1982, and, more specifically, had seen him and her son leave the woods together on August 24, 1982. The defendant had vehemently denied these facts while on the witness stand. We caution, however, that a party may not introduce, under the guise of "rebuttal," direct testimony that has been prohibited because of noncompliance with Rule 16. If such was the case here, however, it constituted harmless error.

The defendant's appeal is denied and dismissed, and the judgment appealed from is affirmed. The papers in this case may be remanded to the Superior Court.