STATE

v.

Gerald BROWN.

No. 91–533–C.A.

Supreme Court of Rhode Island.

June 22, 1993.

Richard Casparian, Public Defender, Catherine Gibran, Barbara Hurst, Asst. Public Defenders, for defendant.

## OPINION

MURRAY, Justice.

The State of Rhode Island indicted the defendant, Gerald Brown, with four counts of sexual assault and child molestation. Count 1 charged the defendant with violating G.L.1956 (1981 Reenactment) §§ 11–37–8.1 and 11–37–8.2, as amended by P.L.1984, ch. 59, § 2, by digitally penetrating his daughter, Karen,[1] a person under the age of thirteen. Count 2 charged the defendant with violating the same statutory provisions by engaging in vaginal intercourse with his daughter, Karen. Count 3 charged the defendant with violating § 11–37–4, as amended by P.L.1986, ch. 191, § 1, and § 11–37–5 by engaging in sexual contact with his stepdaughter, Monique. Count 4 charged the defendant with violating §§ 11–37–8.3 and 11–37–8.4, as amended by P.L.1984, ch. 59, § 2, by engaging in sexual contact with his son, Steven, a person under the age of thirteen. The state dismissed the fourth count of the indictment pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure.

After deliberation a jury convicted defendant on the first three counts of the indictment. The trial justice denied defendant's motion for a new trial and sentenced defendant to serve thirty years at the Adult Correctional Institutions. The defendant appeals.

The testimony at trial disclosed the following facts. Doctor Maureen Ryall of Rhode Island Hospital and Women and Infants Hospital testified that she had examined defendant's daughter for signs of physical or sexual abuse. Karen was eight years old at the time of trial. Doctor Ryall testified that Karen had scarring of the perineum, which is the skin in the area around the vaginal opening and the anus. Doctor Ryall stated that the piece of tissue partly covering Karen's vagina, the hymen, was scarred and "stretched * * * [to] at

Jeffrey Pine, Atty. Gen., Jane McSoley, Asst. Atty. Gen., for plaintiff.

---

**1.** We have changed the names of the children in this case.

least a centimeter in diameter," twice the size that the doctor would have expected in a child Karen's age. Doctor Ryall also testified that she had performed a rectal exam of Karen and had found a "reflexed relaxation of the anal sphincter," which indicated to the doctor that "there's been some sort of pressure or fixture against the area on numerous occasions." Doctor Ryall concluded that her examination of Karen revealed findings that were "consistent with sexual abuse."

Following Dr. Ryall's testimony, Karen testified concerning the sexual abuse. Karen said that defendant would ask her if she wanted to play a game and then defendant would "put his private into my private." Karen also testified that defendant would "be taking his fingers and pushing it into me, my private." Karen said that this activity continued for about two years. Although Karen stated that she did not know how many times defendant abused her, she testified that it happened a lot. Karen also testified that defendant warned her, "Don't tell anybody or I'll hurt you real bad."

The defendant's stepdaughter, Monique, testified concerning the count-3 charge that defendant had engaged in sexual contact with her. Monique said that at some point between January and June of 1986, when she was twelve or thirteen years old, she stayed home from school because she was sick. Monique stated that defendant told her on that day that he had heard that there was a virus "going around" and that he needed to examine Monique's body. Monique testified that defendant had her lie on her bed, felt her upper body, including her breasts, and then felt and opened her vagina.

The defendant took the stand and denied these charges. The defendant denied ever having sexually assaulted Karen. Concerning the incident with Monique, defendant stated that the nurse at Monique's school had told him that there was an outbreak of measles and chicken pox and that the nurse had instructed defendant to check for red blotches under Monique's arms, on her chest, and behind her knees.

The defendant denied ever having touched Monique's vagina.

In defense, counsel questioned defendant and Sandra Furlong (Furlong), the ex-wife of defendant and the mother of Karen, Steven, and Monique, concerning their stormy marital relationship. The defendant testified that he and Furlong had filed for divorce on three separate occasions. The defendant also said that although a Family Court justice had granted defendant supervised visitation rights pertaining to Karen and Steven, Furlong refused to allow him to see his children. The defendant stated that Furlong told him that he would never see his children again.

Furlong also testified concerning these matters. She stated that she was extremely upset on November 4, 1988, the date that a Family Court justice granted defendant the right to visit with Karen and Steven in a supervised environment because "my children were scared to see [defendant]." Furlong stated that it was not until the day after the Family Court justice granted defendant visitation rights that Karen told her that defendant had been abusing her sexually.

Defense counsel used this evidence in closing argument and argued to the jury that defendant had been falsely accused. Defense counsel asserted that Furlong had manipulated Karen and Monique into falsely accusing defendant after Furlong learned that defendant would have the right to visit with the children. Notwithstanding this argument and the other points raised by defense counsel in closing argument, the jury convicted defendant on three counts of sexual assault and child molestation.

On this appeal, defendant raises three points of error: (1) that the trial justice erred in allowing Dr. Ryall to testify concerning the rectal examination the doctor had performed of Karen because this evidence went beyond the bill of particulars, was irrelevant, and was prejudicial, (2) that the trial justice erred in refusing to grant defendant's motion for judgment of acquittal on the second-degree-sexual-assault charge involving defendant's stepdaughter,

Monique, and (3) that the trial justice erred in refusing to allow defendant to present rebuttal testimony. We address each of these arguments in turn.

## I

## THE ADMISSION OF EVIDENCE BEYOND THE BILL OF PARTICULARS

Prior to trial, defense counsel moved for a bill of particulars pursuant to Rule 7(f) of the Superior Court Rules of Criminal Procedure, requesting that the state identify Karen's precise genital and/or anal openings into which the state alleged that defendant had intruded. In addition defense counsel requested the state to identify the part of the body or the object with which the state alleged defendant had intruded into Karen's body. Viewing the indictment and the state's response to the motion for the bill of particulars together, the state indicated that pertaining to count 1 of the indictment, the state alleged digital penetration of the vagina and pertaining to count 2 of the indictment, the state alleged penile penetration of the vagina.

As noted earlier in this opinion, Dr. Maureen Ryall testified at trial concerning her rectal examination of Karen and her finding of evidence of rectal penetration. Defense counsel objected to the admission of this evidence, asserting that this evidence regarded rectal penetration, that the bill of particulars limited the state's proof to the issue of vaginal penetration, and that in light of Rhode Island law regarding the effect of a bill of particulars, this evidence was inadmissible. In addition defense counsel asserted that because this evidence was outside the scope of the bill of particulars, it was irrelevant and prejudicial to defendant and therefore inadmissible.

■ We agree with defendant that the trial justice should have either excluded this evidence or admitted the evidence with a limiting instruction. However, upon review of the entire record, and in light of the independent evidence suggesting vaginal penetration, we conclude that the trial justice's decision to admit Dr. Ryall's testimony concerning her rectal examination of Karen without a limiting instruction was harmless beyond a reasonable doubt.

We begin by analyzing defendant's assertion that Dr. Ryall's testimony regarding the rectal examination was inadmissible pursuant to Rhode Island law regarding bills of particulars. We have written that the primary purpose of a bill of particulars "is to supply the defendant with such particulars as are necessary in order that judicial surprise is avoided at trial." *State v. Collins*, 543 A.2d 641, 654 (R.I.1988) (citing LaFave & Israel, *Criminal Procedure*, § 19.2(f) at 717–18 (1985)).

We also have held that a jury may not convict a defendant of acts not charged in the indictment or the bill of particulars. *State v. Brown*, 574 A.2d 745, 748–49 (R.I. 1990). In *Brown* the state charged the defendant with various sex crimes and the defendant requested a bill of particulars identifying, among other information, the instrumentalities of penetration. The state responded, identifying the defendant's fingers, his penis, and a banana as the instrumentalities of penetration. *Id.* at 748. At trial the trial justice admitted evidence that the defendant had penetrated the victim with a rubber penis. In addition the trial justice instructed the jury that it could convict the defendant if the jury found sexual penetration "by any object." *Id.* at 747.

We held in *Brown* that the trial justice committed error in two respects. First, we stated that the bill of particulars restricted the state to the allegations set forth in the bill and that the trial justice's admission of evidence that went beyond the bill was error. *Id.* at 748. Second, we held that the trial justice erred in instructing the members of the jury in a manner that allowed them to convict the defendant of an uncharged act, the sexual penetration with the rubber penis. *Id.* 748–49. We held that these two errors, in combination, amounted to reversible error. *Id.*

In the present case the trial justice did not err in the same respects and to the same magnitude as the trial justice did in the case of *Brown.* It is true that the trial

justice in this case admitted evidence that went beyond the bill of particulars. The trial justice, however, properly instructed the members of the jury that in order to convict defendant, they had to find vaginal penetration, the precise charge set forth in the bill of particulars. Unlike the situation in the *Brown* case, the trial justice's instructions, to a degree, prevented the jury from convicting defendant on the basis of the evidence regarding rectal penetration.

In addition the trial justice's admission of this evidence did not thwart the primary purpose of a bill of particulars, which is to prevent surprise at trial. *Collins*, 543 A.2d at 654. In *Collins* we stated that "[t]he rules governing variance between proof and pleading apply to a bill of particulars just as they do to an indictment or information." *Id.* at 655. In *Collins* we also cited with approval the standard set forth by Justice Sutherland of the United States Supreme Court for examining variations between a charging instrument and the proof at trial. *Id.* Justice Sutherland wrote:

"The true inquiry * * * is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused. The general rule that allegations and proof must correspond is based upon the obvious requirement [ ] * * * that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial * * *." *Id.* (quoting *Berger v. United States,* 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314, 1318 (1935)).

In the present case defendant cannot and does not claim that he was surprised at trial by the introduction of the testimony regarding rectal penetration. Our review of the record reveals that the state, as part of the discovery process, furnished defendant with a copy of Dr. Ryall's November 7, 1988 medical report, which states that Dr. Ryall found evidence of scarring of the rectum. Therefore, defendant knew or should have known that the state might attempt to introduce this evidence at trial.

Pursuant to the rules regarding bills of particulars, we do not believe that the trial justice's admission of this evidence prejudiced defendant. The trial justice properly instructed the members of the jury that they had to find evidence of vaginal penetration. In addition defendant had advance notice that the state might attempt to introduce this evidence at trial.

■ Having concluded that the admission of the evidence of rectal penetration did not prejudice defendant from a bill-of-particulars standpoint, we now turn to defendant's assertion that the trial justice should have excluded this evidence on the ground that it was irrelevant and prejudicial. The state responded to this argument at trial, maintaining: (1) that defendant should have moved to prohibit the admission of Dr. Ryall's testimony by way of a motion in limine, (2) that defendant had failed to note a timely objection to the admission of this testimony, (3) that because Dr. Ryall testified that an eight-year-old child may not know the difference between her anus and her vaginal opening, this testimony was relevant, and (4) pursuant to our holdings in *State v. Pignolet,* 465 A.2d 176, 180 (R.I.1983), and *State v. Jalette,* 119 R.I. 614, 627–28, 382 A.2d 526, 533–34 (1978), this evidence was admissible as other-acts evidence to prove defendant's intent toward the victim and to prove defendant had an opportunity to abuse the victim.

■ The first three arguments for the admission of this evidence offered by the state are without merit. There is no requirement that defense counsel object to the admission of evidence by way of a motion in limine. *See State v. Bennett,* 122 R.I. 276, 286, 405 A.2d 1181, 1186 (1979) (stating that a party *may* seek a motion in limine). In addition, although Dr. Ryall mentioned her rectal examination of Karen before defense counsel objected to this evidence, defense counsel did object as soon as Dr. Ryall proceeded to testify regarding the details of the examination. We believe this objection was sufficient to preserve the issue of the relevancy of this testimony before the trial justice and to

preserve this matter for our review on this appeal.

Concerning Dr. Ryall's statement that Karen may not have known the difference between her rectum and her vagina, we do not believe that this is a ground for finding this evidence relevant. In this case Dr. Ryall testified before Karen took the stand and there was no showing that Karen did not know the difference between her anus and her vaginal opening. In addition Karen testified to vaginal penetration, the precise charge that the charging instruments required the state to prove. We fail to perceive how Dr. Ryall's statement that Karen may not have known the difference between the two bodily openings rendered Dr. Ryall's testimony regarding rectal penetration relevant to the state's endeavor to prove vaginal penetration.

■ We conclude, however, that it was within the trial justice's discretion to admit Dr. Ryall's testimony regarding rectal penetration pursuant to our holdings in *Jalette* and its progeny and Rule 404(b) of the Rhode Island Rules of Evidence. As we stated in *State v. Chartier*, 619 A.2d 1119, 1122 (R.I.1993), Rule 404(b) prohibits the admission of other-acts evidence that suggests an accused's bad character because "the potential for creating prejudice in the minds of the jurors outweighs its probative value." Other-acts evidence is admissible, however, when the other acts "are interwoven with the offense for which the defendant is being tried," *id.* at 1123, or when the other acts are relevant to prove an accused's "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that defendant feared imminent bodily harm and that fear was reasonable." Rule 404(b).

In deciding whether to admit evidence pursuant to Rule 404(b), a trial justice must carefully weigh the possibility that this evidence will unfairly prejudice the accused, and in the event the trial justice finds that the probative value of the evidence outweighs the danger of unfair prejudice, the trial justice must offer "a specific instruction as to the limited purpose for which the

evidence is being introduced." *Chartier*, 619 A.2d at 1123 (quoting *Jalette*, 119 R.I. at 625, 382 A.2d at 532, and citing *State v. Peters*, 86 R.I. 447, 450, 136 A.2d 620, 621 (1957)).

In accordance with the tests set forth above, we believe Dr. Ryall's testimony was relevant and material. Doctor Ryall's testimony suggested that defendant committed illegal sexual acts highly "interwoven" with the illegal acts charged in the indictment and the bill of particulars. The evidence of rectal penetration involved the same victim as in the charge of vaginal penetration and involved the same general time interval as in the charge of vaginal penetration. In light of the close relationship between the charged acts and the other-acts evidence, we believe that the evidence of rectal penetration was probative of defendant's lewd intent toward the victim. *State v. Tobin*, 602 A.2d 528, 531–32 (R.I.1992) (holding that evidence of other sexual acts may be admissible to prove the accused's "lewd" intent and, after canvassing the law of other jurisdictions, stating that this exception to Rule 404(b) "is almost universally recognized in cases involving proof of prior incestuous relations between the defendant and the complaining victim," quoting *Getz v. State*, 538 A.2d 726, 732 (Del.1988)).

■ It is true, as defendant suggests, that the admission of this testimony of rectal penetration was likely to inflame and invoke the emotions of the jury in this case. The balancing test referred to in *Chartier* and *Jalette* does not, however, bar the admission of all Rule 404(b) evidence of an inflammatory nature. It is only when the evidence "unfairly" or "unduly" inflames the jury that the trial justice should exclude this evidence. *See also* Rules 401 and 403 of the Rhode Island Rules of Evidence. In the present case we believe that the inflammatory character of this evidence is to a great part inherent in the nature of the accusations charged against defendant. Given that this evidence was probative of defendant's lewd intent toward Karen, it was within the trial justice's discretion to admit this evidence of rectal penetration.

We have concluded that the evidence of rectal penetration was relevant to the state's duty to prove vaginal penetration and that the inflammatory nature of this evidence did not render the evidence inadmissible. The record reflects, however, that both the trial justice and defendant erred with regard to *Jalette*'s requirement that the trial justice specifically instruct the jury that the state is using this evidence for the specific purpose of proving defendant's lewd intent. The trial justice in this case did not rely expressly on Rule 404(b) in admitting this testimony, nor did the trial justice offer a limiting instruction. The record also reveals that defense counsel failed to request a limiting instruction.[2] This failure contributed to the error at trial since the limiting instruction is one of the primary safeguards that ensure that the members of the jury will not use the other-acts evidence to convict an accused on the basis of his or her bad character. *Tobin*, 602 A.2d at 532.

In deciding whether the trial justice's allowance of this evidence and failure to give a limiting instruction amounted to reversible error, we face a number of considerations pointing in opposite directions. From the perspective of the bill of particulars, the evidence of rectal penetration clearly went beyond the bill. The admission of this evidence, however, did not prejudice defendant because he had notice that the state might attempt to use this evidence and the trial justice properly instructed the members of the jury that they had to find evidence of vaginal penetration, the charge set forth in the bill of particulars. From the perspective of Rule 404(b), this evidence was probative of defendant's lewd intent toward Karen because of the close relationship between the crime charged and the other-acts evidence. The trial justice, however, erred in failing to

offer a limiting instruction in accordance with our holding in *Jalette*.

In view of this analysis the proper course of conduct for the trial justice was either (1) to exclude the testimony regarding rectal penetration, or (2) to admit the testimony, finding that the variance between the proof at trial and the bill of particulars did not unfairly surprise defendant, and offer the specific instruction regarding the limited use of the other-acts evidence.

In the context of this trial, however, we believe the trial justice's admission of the evidence of rectal penetration without a limiting instruction did not amount to reversible error. Doctor Ryall provided independent testimony concerning her medical finding of vaginal penetration. Doctor Ryall testified to scarring of the vagina as well as to an "enlarged hymen." Moreover Dr. Ryall's medical testimony corroborated Karen's testimony concerning the vaginal penetration. We conclude that the untainted evidence in this case was overwhelmingly sufficient to convict defendant and that the trial justice's admission of the evidence of rectal penetration without a limiting instruction was harmless beyond a reasonable doubt.

## II

## THE TRIAL JUSTICE'S DENIAL OF DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL ON THE SECOND–DEGREE–SEXUAL–ASSAULT CHARGE

■ The second argument raised by defendant concerns the trial justice's denial of defendant's motion for judgment of acquittal on the second-degree-sexual-assault charge regarding defendant's stepdaughter, Monique. The jury convicted defendant of this charge pursuant to § 11–37–4, which states:

> *Jalette* we do not believe that defendant's failure to request a limiting instruction results in defendant's waiver of the right to complain about its absence on this appeal. The trial justice always should take it upon himself or herself to offer a limiting instruction when admitting evidence of other sex acts.

---

2. The general rule as enunciated in Rule 105 of the Rhode Island Rules of Evidence is that a party must request a limiting instruction in order to receive one. In *State v. Jalette*, 119 R.I. 614, 627–28, 382 A.2d 526, 533–34 (1978), however, we stated that a trial justice "shall" offer a limiting instruction when admitting evidence of other sex acts. In light of this language in

"Definition of guilt of second degree sexual assault.—A person is guilty of a second degree sexual assault if he or she engages in sexual contact with another person and if any of the following circumstances exist:

\* \* \* \* \* \*

(B) The accused uses force or coercion."

In addition to the requirements that appear on the face of § 11–37–4, we also have held that in order to obtain a conviction under this statute, the state must prove that the accused engaged in contact with the victim for the purpose of sexual arousal, gratification, or assault. *Tobin,* 602 A.2d at 535.

At trial Monique testified that defendant had told her that he heard there was a virus going around and that he needed to check her body. Monique stated that defendant ordered her to lie on a bed, felt her upper body, including her breasts, and felt and opened her vagina. In addition Monique testified that after the incident defendant told her "[O]kay, you can get up now." Monique also said that defendant was an authority figure to her and had the ability to order her to behave in a certain manner. On cross-examination Monique testified that she was scared at the time of the examination. Monique also testified that on a prior occasion she had observed defendant watching her as she was getting dressed.

At the close of the state's case, defendant moved for a judgment of acquittal, arguing that the state not only failed to prove force or coercion but also failed to prove that defendant touched Monique for the purpose of sexual arousal, gratification, or assault as is required by our case law interpreting § 11–37–4.

■ The standard for reviewing a motion for judgment of acquittal is well established in this jurisdiction. The trial justice, and this court on review, "must consider the evidence presented and the inferences which may be drawn therefrom in the light most favorable to the prosecution." *State v. Burke,* 522 A.2d 725, 734 (R.I.1987). If the evidence viewed in this light is sufficient to warrant a jury verdict of guilty beyond a reasonable doubt, the trial justice should deny the motion. *Id.*

In this case there was sufficient evidence to support the jury verdict that defendant used force or coercion when engaging in sexual contact with Monique. The General Assembly defined force or coercion in § 11–37–1, as amended by P.L.1986, ch. 191, § 1. Part (C) of this section states that an accused uses force or coercion if the accused:

"coerces the victim to submit by threatening to use force or violence on the victim and the victim reasonably believes that the accused has the present ability to execute these threats."

In *Burke* we held that this language includes implied as well as stated threats. *Burke,* 522 A.2d at 734. We wrote:

"It is well established that 'threats of force need not be made in any particular manner in order to put a person in fear of bodily harm.' \* \* \* A command on the part of one who possesses complete authority and overwhelming force to back up that authority need not be accompanied by an explicit threat in order to be effectively coercive." *Id.* at 735.

■ In the instant case we agree with the trial justice, who concluded that when one views the evidence in the light most favorable to the prosecution, it is apparent that defendant used his position of authority in the household to order Monique into the bedroom and, after placing her in a position of vulnerability, engaged in sexual contact with her. These facts bring this case within the definition of "implied threats" as set forth in *Burke,* and accordingly the trial justice properly denied defendant's motion for judgment of acquittal on this ground. In addition we have reviewed the trial justice's jury instruction on force and coercion, which defendant claims was erroneous, and found that it conforms to Rhode Island law on the subject.[3]

---

**3.** The defendant relies on the Pennsylvania case, *Commonwealth v. Titus,* 383 Pa.Super. 54, 63,

We also agree with the trial justice that the evidence supported the jury verdict that defendant touched Monique for the purpose of sexual arousal, gratification, or assault. The trial justice did not commit error in denying defendant's motion for judgment of acquittal on the second-degree-sexual-assault charge.

### III

### THE TRIAL JUSTICE'S REFUSAL TO ALLOW DEFENDANT'S REBUTTAL TESTIMONY

██ The third and final argument raised by defendant concerns defense counsel's attempt to recall defendant to testify in rebuttal following the testimony of defendant's ex-wife, Furlong. Defense counsel sought to recall defendant in order for defendant to provide further testimony concerning Furlong's refusal to bring Karen and Steven, two of defendant's children, to supervised visitation in Family Court. The trial justice denied defendant's request.

██ The decision to allow or disallow rebuttal testimony lies in the sound discretion of the trial justice. *State v. Simpson,* 520 A.2d 1281, 1284 (R.I.1987). In this case the trial justice noted on the record that the testimony that the defendant sought to provide in rebuttal had already been testified to on direct examination. We believe that the trial justice had a valid reason for disallowing the rebuttal testimony, and accordingly he did not abuse his discretion.

For these reasons we deny and dismiss the defendant's appeal and affirm the judgment of conviction.

LEDERBERG, J., did not participate.

556 A.2d 425, 430 (1989), for the proposition that the existence of a parent-child relationship, without more, is insufficient to prove "forcible compulsion." This case is different from *Titus,* however, because more than a mere parent-child relationship existed. In this case defen-

dant used his position of authority to command the child to assume a vulnerable position and then to engage in sexual contact with her. This was sufficient to bring this case within Rhode Island's definition of force or coercion.